Peelle, J.,
delivered the opinion of the court:
The claimant, a commander in the United States Navy on the retired list since October 25, 1901, seeks to recover the difference between the shore pay, which he received, and the sea pay of his grade from June 5 to September 8,1899, under the following state of facts:
March 17, 1899, the claimant was, by order of the Secretary of the Navy, detached from duty as secretary of the Light-House Board, Treasury Department, Washington, D. C., as well as from such other duties as may have been assigned to him, and was ordered to “ report to the commander in chief of the Asiatic Station for the command of the U. S. S. Concord.” The complainant reported, in compliance with the order, June 4, 1899, and on that date was verbally directed by the commander in chief to assume command of the Concord as soon as the claimant should fall in with that vessel. But, on the next day, June 5, before reporting or assuming command of said vessel, the claimant was, upon the recommendation of the medical board of survey, ordered to the United States Naval Hospital at Yokohama, Japan, for medical treatment, where he went and remained under treatment until September 8, 1899, when, by order of the commander in chief, the claimant was ordered to Manila to report to the commander in chief, to relieve Lieut. Commander J. B. Briggs from the command of the Concord, which he did, leaving the hospital September 8 and assuming-command of said vessel September 25, 1899.
The claimant contends, on the facts stated, that he is entitled to the sea pay of his grade from June 5 to September 8, 1899, and that if not so entitled, then he contends that during the time he was in the hospital he was on shore duty beyond *218 seas under detail therefor within the meaning of section 13 of the act of March 3, 1899 (30 Stat. L., 1007).
Had the claimant been attached to a vessel, entitling him to sea pay, at the time he was ordered to the hospital for medical treatment, his status in that respect would have continued until he rejoined his vessel, under the decision in the Collins case (37 C. Cls R., 222) ; but the claimant was not attached to a vessel, entitling him to sea pay, when he was ordered to the hospital, and consequently he is not entitled to sea pay while he was under treatment in the hospital.
Section 13 of the act of 1899, supra, so far as material to this case, provides:
“ Sec. 13. That after June thirtieth, eighteen hundred and ninety-nine, commissioned officers of the line of the Navy and of the Medical and Pay Corps shall receive the same pay and allowances, except forage, as are or may be provided by or in pursuance of law for the officers of corresponding rank in the Army: Provided, That such officers when on shore shall receive the allowances, but fifteen per centum less pay than when on sea duty; but this provision shall not apply to warrant officers commissioned under section twelve of this act: Provided further, Then when naval officers are detailed for shore duty beyond seas they shall receive the same pay and allowances as are or may be provided by or in pursuance of law for officers of the Army detailed for duty in similar places.”
In the case of United States v. Thomas the Supreme Court, in construing that provision of the act relating to the detail of naval officers for shore duty beyond seas, said:
“ The intention of Congress was evidently to put officers of the Army and Navy on the same footing with respect to their general pay, aiid to make the act prospective in its application to future legislation, so that if Congress should thereafter raise the general pay of army officers as fixed by Revised Statutes, section 1201, a like increase, should apply to navy officers. It does not, however, follow that Congress may not increase the pay of army officers for services in particular places or under special circumstances, without thereby intending that the same increase shall apply to naval officers performing the same service under like circumstances. Thus, if the 'act should allow army officers increased pay when ordered to sea or to a foreign port, it would not follow that naval officers would be entitled to a like increase, since such *219 service would be wholly exceptional in the case of army officers, while it is the natural and normal duty of navy officers to engage in sea service, cruise in foreign waters, and lie up in foreign ports. It never could have been the intention of Congress to disable itself from awarding to a particular class of army officers an increase of pay for exceptional services without thereby increasing the pay of navy officers, whose lives are largely passed in performing like services.
“ Confirmation of this view is found in the second proviso of section 13, ‘ that when naval officers are detailed for shore duty beyond seas they shall receive the same pay and allowances as are or may be provided by or in pursuance of law for officers of the Army detailed for duty in similar places.’ Here is a distinct recognition of the fact that when naval officers are detailed for a special or unusual duty beyond seas they shall receive the same pay as army officers detailed for the same duties. This provision, however, would be wholly unnecessary if the act were given the broad application contended for, since the increased pay allowed to army officers for duty beyond seas would apply to naval officers without a special proviso to that effect. Shore duty beyond seas being an exceptional duty, both to officers of the Army and Navy, and being probably attended by increased expenditures and dangers incident to a tropical climate, it is very natural that Congress should award them both increased compensation.”
It certainty can not be contended that when a naval officer is ordered to a hospital beyond seas for medical treatment such order will operate as a detail for special or unusual duty entitling such officer to increased pay.
The petition is dismissed.